UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | |
|---|---|
| LESLIE T.[1], | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No.: 4:19-cv-00113-SEB-DML |
| | ) |
| ANDREW M. SAUL, | ) |
| Commissioner of the Social Security, | ) |
| Administration, | ) |
| | ) |
| Defendant. | ) |

Report and Recommendation on Complaint for Judicial Review

This matter was referred to the Magistrate Judge under 28 U.S.C. § 636(b)(1)(B) and Fed. R. Civ. P. 72(b) for a report and recommendation as to its appropriate disposition. As addressed below, the Magistrate Judge recommends that the District Judge REVERSE and REMAND the decision of the Commissioner of the Social Security Administration that plaintiff Leslie T. is not disabled.

## Introduction

Leslie applied in January 2016 for Disability Insurance Benefits (DIB) and Supplemental Security Income Benefits under Titles II and XVI, respectively, of the Social Security Act, alleging that she has been disabled since March 5, 2015. Before her January 2016 applications, she had been awarded disability benefits for a closed

---

[1] To protect privacy interests of claimants for Social Security benefits, the Southern District of Indiana has chosen to use only the first name and last initial of non-governmental parties in its Social Security judicial review opinions. The plaintiff will therefore be referred to by her first name in this Report and Recommendation.

period of disability ending March 4, 2015. After a video hearing held March 29, 2018, before administrative law judge Sandra R. DiMaggio Wallis, the ALJ issued her decision on July 25, 2018, that Leslie was not disabled at any time after March 4, 2015, and before the date of the decision. The Appeals Council denied review, rendering the ALJ's decision for the Commissioner final. Leslie timely filed this civil action under 42 U.S.C. § 405(g) for review of the Commissioner's decision.

    Leslie contends that, essentially, the ALJ's decision is riddled with error. She contends the ALJ (1) did not account for certain impairments and wrongfully found that depression and anxiety were not severe impairments; (2) did not properly analyze whether she was presumptively disabled at step three; (3) did not properly account for all impairments and their effects in the residual functional capacity determination; (4) did not properly evaluate her nurse practitioner's opinion about her functional capacity; (5) unreasonably relied on opinions of the reviewing physicians; (6) made a patently wrong credibility determination; and (7) failed to evaluate properly past relevant work at step four.

    The court will first describe the legal framework for analyzing disability claims and the court's standard of review and then address Leslie's assertions of error.

## Standard for Proving Disability

    To prove disability, a claimant must show she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or

can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). Leslie is disabled if her impairments are of such severity that she is not able to perform the work she previously engaged in and, if based on her age, education, and work experience, she cannot engage in any other kind of substantial gainful work that exists in significant numbers in the national economy. 42 U.S.C. § 423(d)(2)(A). The Social Security Administration ("SSA") has implemented these statutory standards by, in part, prescribing a five-step sequential evaluation process for determining disability. 20 C.F.R. § 404.1520.

Step one asks if the claimant is currently engaged in substantial gainful activity; if she is, then she is not disabled. Step two asks whether the claimant's impairments, singly or in combination, are severe; if they are not, then she is not disabled. A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). The third step is an analysis of whether the claimant's impairments, either singly or in combination, meet or medically equal the criteria of any of the conditions in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1. The Listing of Impairments includes medical conditions defined by criteria that the SSA has pre-determined are disabling, so that if a claimant meets all of the criteria for a listed impairment or presents medical findings equal in severity to the criteria for the most similar listed impairment, then the claimant is presumptively disabled and qualifies for benefits. *Sims v. Barnhart,* 309 F.3d 424, 428 (7th Cir. 2002).

If the claimant's impairments do not satisfy a listing, then her residual functional capacity (RFC) is determined for purposes of steps four and five. RFC is a claimant's ability to do work on a regular and continuing basis despite her impairment-related physical and mental limitations. 20 C.F.R. § 404.1545. At the fourth step, if the claimant has the RFC to perform her past relevant work, then she is not disabled. The fifth step asks whether there is work in the relevant economy that the claimant can perform, based on her age, work experience, and education (which are not considered at step four), and her RFC; if so, then she is not disabled.

The individual claiming disability bears the burden of proof at steps one through four. *Bowen v. Yuckert,* 482 U.S. 137, 146 n.5 (1987). If the claimant meets that burden, then the Commissioner has the burden at step five to show that work exists in significant numbers in the national economy that the claimant can perform, given her age, education, work experience, and functional capacity. 20 C.F.R. § 404.1560(c)(2); *Young v. Barnhart,* 362 F.3d 995, 1000 (7th Cir. 2004).

### Standard for Review of the ALJ's Decision

Judicial review of the Commissioner's (or ALJ's) factual findings is deferential. A court must affirm if no error of law occurred and if the findings are supported by substantial evidence. *Dixon v. Massanari,* 270 F.3d 1171, 1176 (7th Cir. 2001). Substantial evidence means evidence that a reasonable person would accept as adequate to support a conclusion. *Id.* The standard demands more than a scintilla of evidentiary support, but it does not demand a preponderance of the evidence. *Wood v. Thompson,* 246 F.3d 1026, 1029 (7th Cir. 2001).

The ALJ is required to articulate a minimal, but legitimate, justification for her decision to accept or reject specific evidence of a disability. *Scheck v. Barnhart,* 357 F.3d 697, 700 (7th Cir. 2004). The ALJ need not address every piece of evidence in her decision, but she cannot ignore a line of evidence that undermines the conclusions she made, and she must trace the path of her reasoning and connect the evidence to her findings and conclusions. *Arnett v. Astrue,* 676 F.3d 586, 592 (7th Cir. 2012); *Clifford v. Apfel,* 227 F.3d 863, 872 (7th Cir. 2000).

## Analysis

### I. The ALJ's Sequential Findings

Leslie was born in 1973, was 42 years old at the alleged onset of her disability on March 5, 2015, and was 45 years old at the time the ALJ issued her decision. Leslie last worked in 2010 as a customer service representative at a K-Mart store, a job that required standing and heavy lifting (up to 50 pounds). She had been found disabled for a closed period of disability ending March 4, 2015, in a previous decision by the Agency. She periodically volunteered, up to around 2015, at an adult living facility in its activities department.

At step one, the ALJ found that Leslie had not engaged in substantial gainful activity since her alleged onset date. At step two, she determined that Leslie's severe impairments were degenerative disc disease of the lumbar spine, COPD and/or asthma, obesity, bilateral carpal tunnel syndrome with a prior surgery at her right upper extremity, and a history of prior surgery at the cervical spine (*i.e.,* the neck). She found that any mental impairments, for which Leslie took medication

and attended regular therapy sessions, were non-severe, concluding that her mental impairments caused no more than mild deficiencies in the B criteria because (a) the medical records do not document "significant organic mental health issues," (b) her prescriptions for Lexapro and Celexa medications were "short lived," and (d) her "main stressors" are "largely situational, such as limited finances and problems with [dealing with] her [three] daughters" as a single mother. (R. 18).

At step three, the ALJ stated that Leslie's (1) back and neck impairments did not result in any of the conditions under Listing 1.04 (disorders of the spine), (2) carpal tunnel syndrome did not result in disturbance of motor function in the upper extremities as required under Listing 11.14 (peripheral neuropathy), and (3) breathing disorders were not supported by pulmonary function testing or other diagnostics satisfying the requirements of Listings 3.02 (chronic pulmonary insufficiency) and 3.03 (asthma). With respect to Leslie's obesity, the ALJ decided there was no evidence that her "borderline extreme obesity" exacerbated her other impairments to a degree resulting in listing-level severity.

For the RFC, the ALJ decided that Leslie is capable of a range of light work. She can sit for six hours and stand and/or walk for six hours in a work day, lift/carry/push/pull up to 20 pounds occasionally and up to 10 pounds frequently, occasionally climb ramps/stairs, balance, stoop, crouch, kneel, and crawl, never climb ladder, ropes, or scaffolds, and only frequently (as opposed to constantly) finger and handle with both upper extremities. She also imposed certain

environmental restrictions, prohibiting certain types of hazardous work activities and concentrated exposure to respiratory irritants. (R. 19).

Based on the RFC and the testimony of a vocational expert, the ALJ found at step four that Leslie could perform her past relevant work as a courtesy desk clerk, a job the VE testified is light in exertion in the amount of weight required for lifting and is semi-skilled. The RFC contains no limitations related to mental functioning.

The ALJ made an alternative finding at step five that jobs consistent with Leslie's RFC and vocational factors are available in sufficient numbers in the national economy and therefore she is not disabled. That finding was based on the VE's testimony, which the ALJ credited, that Leslie is capable of performing the tasks required of a mail clerk (DOT #209.687-026), inspector (DOT #559.687-074), and stocker (DOT #299.667-014).

## II. Leslie's Assertions of Error

As described at the outset, Leslie makes numerous assertions of error. The court does not reach all of them because it finds that some of them are well-taken and, on their own, require reversal and remand.

### A. If the claimant has at least one severe impairment, there is no error at step two of the sequential analysis.

Leslie contends that the ALJ erred at step two because she (1) did not address at all whether her chronic neck and right shoulder impairments and hypertension were severe and (2) erroneously found her mental impairments to be non-severe.

The step two analysis asks whether the claimant has any severe, medically determinable impairment. If the claimant has none, then she is *not* entitled to benefits and the analysis of disability ends, but if the claimant has at least one severe, medically determinable impairment, then the sequential analysis continues to determine whether there is a presumptive disability at step three and, if not, whether the claimant is capable of working despite the effects on work capacity of *all* severe and non-severe impairments. Thus, if an ALJ determines there exists at least one severe impairment, there technically is no legal error at step two. *Curvin v. Colvin,* 778 F.3d 645, 649 (7th Cir. 2015) (a favorable disability ruling can be made only at step three or at step five, and there can be no legal error at step two where the ALJ makes "as favorable a determination as can be made" at that step by finding that the claimant has at least one severe impairment based on the objective medical evidence). But an ALJ's failure to address impairments at step two can be a harbinger of errors beyond step two because the ALJ may then fail to address whether the impairments she found were not severe or impairments she may have not addressed at all cause limitations in work capacity for purposes of formulating an RFC and then deciding whether the claimant can work. *See id.* at 649-50 (any failure to address all impairments at step two "does not matter" where the ALJ elsewhere in her decision properly considers all severe and non-severe impairments, the objective medical evidence, the claimant's symptoms and her credibility in determining her capacity to work).

As explained below, the ALJ's failure to address some medically determinable impairments at step two and her decision that mental impairments were non-severe led to errors at other steps that do matter—and require reversal and remand.

**B. The ALJ's step three decision regarding Leslie's physical impairments is supported by substantial evidence.**

Leslie contends that the ALJ erred at step three in evaluating all of her medical impairments—physical and mental—because the ALJ's analysis allegedly is perfunctory and based on stale medical opinions regarding equivalence. The court disagrees with respect to the ALJ's analysis of Leslie's physical impairments. The court addresses the ALJ's analysis of Leslie's mental impairments in paragraph C below.

The record evidence supports the ALJ's step three determination with respect to physical impairments. The ALJ bears responsibility for deciding medical equivalence for cases at the ALJ level. 20 C.F.R.§ 404.1526(e). While "longstanding policy requires that the judgment of a physician (or psychologist) designated by the Commissioner on the issue of equivalence on the evidence before the [ALJ] or the Appeals Council must be received into the record as expert opinion evidence and given appropriate weight" (SSR 96-6p, 1996 WL 374180 at *3 (July 2, 1996)), Disability Determination and Transmittal Forms "conclusively establish that consideration by a physician designated by the Commissioner has been given to the question of medical equivalence at the initial and reconsideration levels of administrative review." *Scheck v. Barnhart,* 357 F.3d 697, 700 (7th Cir. 2004) (internal citations omitted); *see also* SSR 96-6p, 1996 WL 374180 at *3. The record

9

contains the appropriate determination forms, and Leslie does not cite any particular evidence *or* medical opinion to meet her burden of proof that she suffered from any listing-level physical impairment requiring a ruling at step three that she is presumptively disabled. And although she contends that the ALJ should have obtained new medical opinions, she has not identified specific medical criteria in any listing and the specific objective medical evidence correlating with such criteria that should have caused the ALJ to conclude that more evidence—new opinions— were reasonably necessary to make a determination at step three. Because Leslie has not shown how further medical expert testimony could lead to a different conclusion on whether any listing was met or medically equaled, she has not met her burden to show an error at step three. *See Filus v. Astrue,* 694 F.3d 863, 868 (7th Cir. 2012) (the claimant "had the burden of establishing that he met all of the requirements of a listed impairment").

The ALJ's analysis of Leslie's mental impairments is, however, deficient throughout her decision.

### C. The ALJ failed to evaluate properly Leslie's mental impairments.

Mental impairments are evaluated using a "special technique" described in 20 C.F.R. § 416.920a. The first task is deciding whether the claimant has a medically determinable mental impairment. § 416.920a(b). The ALJ accepted that Leslie did, based on her testimony that she takes medication and receives therapy for depression and anxiety. (R. 18). The second step requires deciding whether the mental impairment is severe or not by rating "the degree of functional limitation" in

four broad areas known as the B criteria: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting and managing oneself. (These are the same criteria under the mental impairment listings that are evaluated at step three.) There are five possible ratings: none, mild, moderate, marked, and extreme. § 416.920a(b), (c).

    The ALJ determined that Leslie has "no more than mild" restrictions in each area (R. 18), but she did not separately evaluate each broad area of functioning and instead gave three reasons for determining that in each area Leslie suffers only mildly, at best. She stated that (1) medical records do not "document any significant organic mental health issues," (2) she has tried taking Lexapro and Celexa "but these medication trials were short-lived," and (3) her main stressors appear to be largely situational, such as limited finances and problems with her daughters (of note, the claimant is a single mother of three)." These reasons cherry-pick the medical records, ignore important lines of evidence, or give no insight about the effects of Leslie's depression and anxiety within the four broad areas of mental functioning. First, the ALJ did not explain how the absence of a "significant, organic" mental health "issue" bears on any of the four areas of functioning, and there is no medical support in the record to suggest that such an absence (whatever it means to lack a "significant, organic" mental health issue) informs an analysis of these areas of functioning. Indeed, there is *no* expert medical opinion in the record evaluating Leslie's mental impairments and their effects on her functioning, either for purposes of evaluating severity or for determining an appropriate RFC. That is

11

because the administrative record shows that Leslie first began receiving treatment for mental impairments in January 2017, months after the initial and reconsideration levels of review of her disability applications. Because of the lack of any treatment evidence or even allegations by Leslie at the time of her applications that she suffered from a mental impairment, the reviewing physicians at those levels of review determined that there was no evidence of a "medically determinable" mental impairment at all. (R. 110).

But circumstances changed, and they changed dramatically. She received an initial mental health evaluation in January 2017, and began at that time thrice-monthly one-on-one 50-minute therapy sessions that continued through the date of the hearing (and presumably beyond). The records from these 30 therapy sessions (hundreds of pages) are in the administrative record, and they cannot reasonably be evaluated *in toto,* as the ALJ did, as revealing solely situational stressors. They consistently document low energy, low motivation, irritability, concentration issues, and high stress—none of which was discussed by the ALJ. Moreover, there is no suggestion that Leslie's "situational" stressors stemming from interactions with and parenting her daughters are ones that will abate, are disconnected with her depression and anxiety, or have no effects on her functioning  Given their ages, Leslie will be parenting these teenagers as a single mother for more than a "situation." Again, here, the court stresses that no medical expert reviewed any of these records.

The ALJ's recitation that Leslie's medication regimen with Lexapro and Celexa were short-lived omits important information necessary to evaluate the import of their "short-lived" nature. She was prescribed these drugs and began taking them in early March 2017, but her physician discontinued them two months later because Leslie began experiencing hallucinations attributed as side effects of these drugs. *See* May 24, 2017 record, R. 968. It was not reasonable for the ALJ to use the "short-lived" use of depression and anxiety medications to support her findings when the ALJ failed to acknowledge that the medications were discontinued because of severe side effects.

The ALJ's evaluation of the severity of Leslie's depression and anxiety thus falls woefully short. Her failure to address specific evidence correlating to the four broad areas of functioning or to rely on any medical opinion evidence, and her omission of or mischaracterization of important lines of evidence material to those four broad areas of functioning leave her analysis unsupported by substantial evidence.

The ALJ's decision also fails to evaluate properly Leslie's mental impairments as part of the residual functional capacity determination. The Social Security Administration has been clear that the evaluation of whether a mental impairment is severe is an exercise separate from an evaluation whether a claimant has functional limitations stemming from even a non-severe impairment. *See* 20 C.F.R. 416.945(a)(2) ("We will consider all of your medically determinable impairments . . . including your medically determinable impairments that are not

13

'severe' . . . when we assess your residual functional capacity"); SSR 96-8p ("The adjudicator must remember that the limitations identified in the 'paragraph B' . . . criteria are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 . . . . The mental RFC assessment used at steps 4 and 5 . . . requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraph B of the adult mental disorders listings . . . .")

Thus, even if there were substantial evidentiary support for a conclusion that Leslie's mental impairments were not severe, the ALJ still was required to provide some reasoned evaluation about whether the effects of her mental impairments (and the mental effects of her physical impairments, including pain and the side effects of medication treating physical impairments and pain) did or did not require any accommodation within the RFC. The ALJ did not, however, further evaluate Leslie's mental impairments in deciding upon an RFC. The decision lacks any mention of Leslie's mental impairments apart from that described in connection with the ALJ's evaluation of severity—which the court has addressed in detail above. That is error.

The court does not suggest that an ALJ must include mental functioning limitations for Leslie, only that there must be an assessment about Leslie's mental impairments in the context of determining an appropriate RFC, and that assessment cannot rest on a finding (especially one not supported by substantial evidence) that her mental impairments are non-severe.

### D. Other impairments, even if non-severe, also were not evaluated properly in the formulation of the RFC.

Leslie also asserts that the ALJ failed to evaluate properly the effects of other impairments in deciding on an appropriate RFC: her hypertension, chronic degenerative disc disease of the cervical spine, and chronic shoulder joint strain. The court agrees that the ALJ did not properly evaluate Leslie's cervical spine disorder and chronic shoulder joint strain in constructing an appropriate RFC but disagrees that her failure to address hypertension resulted in reversal error.

With respect to hypertension, Leslie contends—but without any supporting authority—that her hypertension necessarily affects the exertional and non-exertional demands of work, and the ALJ therefore erred in failing to account for the effects of hypertension in the RFC. But in formulating the RFC, the ALJ placed great weight on the opinions of the state reviewing physicians who did consider her hypertension and noted its severity. They opined that that impairment, even in combination with Leslie's other impairments, would not prevent her from meeting the demands of a job requiring only a light level of work (allowing for sitting and walking/standing for 6 hours each, low weight restrictions (10 pounds frequently and 20 pounds occasionally) and strict limits on postural activities (only occasional climbing, balancing, stooping, kneeling, crouching, and crawling). Leslie has presented no evidence that hypertension, even in combination with her other impairments, would require greater restrictions.

With respect to Leslie's neck and shoulder problems, however, the medical record demonstrates their worsening over time and that these additional records

15

were not reviewed by medical experts. The records document consistent complaints by Leslie of pain in her neck and in her right shoulder and their effects on her abilities to reach.

A cervical MRI dated February 14, 2017 (not reviewed by agency reviewing physicians) revealed that in addition to Leslie having undergone many years before an anterior fusion at C3 to C6, and having had an MRI in 2014 that showed moderate disc extrusion at C6-C7 (R. 375), she is suffering now from "chronic" disc degeneration at C6-C7. An x-ray dated April 19, 2017 (not reviewed by agency reviewing physicians) of Leslie's right shoulder revealed, as the ALJ correctly noted, that Leslie is now suffering from chronic AC strain, meaning chronic strain at the acromioclavicular joint (the joint in the shoulder where the collarbone and the shoulder blade meet). (R. 774). When the reviewing physicians documented their review of the record and gave opinions about Leslie's RFC, the medical record revealed only that Leslie had complained of right shoulder tenderness at her physical consultative examination in March 2016. (R. 139). Later, things changed.

Leslie's medical provider, whom she began seeing in August 2016, consistently noted Leslie's neck and shoulder pain, and documented that the "ortho thought neck issues [were] causing shoulder pain." (R. 875). But the only manipulative-related restrictions in the RFC have nothing to do with Leslie's neck and shoulder impairments. They relate to Leslie's carpal tunnel syndrome, an impairment not evaluated by the reviewing physicians. The ALJ restricted Leslie's ability to finger and handle with both upper extremities to frequently, as opposed to

16

constantly. (R. 19). The ALJ emphasized that she had given great weight to the reviewing physicians' opinions about Leslie's RFC, matching it exactly, except for finding that Leslie's history of carpal tunnel syndrome "with continued hand pain and numbness complaints" justified the new fingering/handling restriction. (R. 22).

Despite the new medical evidence of chronic disc degeneration in the cervical spine (neck) and of chronic strain at the AC joint (the right shoulder), the fact that these impairments had become to be considered by Leslie's doctors to be chronic, and the evidence that these impairments restrict range of motion and reaching abilities—which Leslie testified to—the ALJ provided no analysis about whether these impairments and their effects required accommodation within the RFC, such as limitations on her ability to reach, either bilaterally or at least with the right upper extremity. That lack of analysis, making the RFC unsupported by substantial evidence, requires remand.

### E. Other matters affecting the RFC determination

Leslie contends that the ALJ made two other errors in her RFC determination. She asserts that the ALJ improperly discounted her testimony about the effects of her impairments on her functioning and that the ALJ improperly evaluated an opinion by her nurse practitioner. The court does not reach these errors because the ALJ's analysis may change upon the receipt of any new medical evidence and the review of materially new medical evidence by experts.

### F. Because the RFC is not supported by substantial evidence, the ALJ's determination of disability at steps four and five must be revisited.

A determination at step four whether a claimant is capable of the demands of her past relevant work or, if not, a determination at step five whether there is other work in the national economy that the claimant can do requires an RFC that is supported by substantial evidence. Because the court has determined that the ALJ's RFC is not supported by substantial evidence—because, at the least, the ALJ (a) did not address whether Leslie's mental impairments or the effects of pain or of her medications require mental functioning accommodations and (b) did not address whether her neck and shoulder impairments required accommodations, the court must remand. Further, as Leslie has argued and the Commissioner did not dispute, the job identified as her past relevant work (courtesy desk clerk) does not meet the regulatory requirements to constitute past relevant work, and the jobs identified as ones she is capable of performing (mail clerk, inspector, and stocker) require an accommodation for reaching, an accommodation that may be appropriate consistent with the medical evidence.

## Conclusion

For the foregoing reasons, the Magistrate Judge recommends that the District Judge reverse and remand under sentence four of 42 U.S.C. § 405(g) the Commissioner's decision that Leslie was not disabled.

Any objections to this Report and Recommendation must be filed in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b). The failure to file objections within fourteen days after service will constitute a waiver of subsequent

review absent a showing of good cause for that failure. Counsel should not anticipate any extension of this deadline or any other related briefing deadlines.

    IT IS SO RECOMMENDED.


Dated: October 19, 2020

                                            Debra McVicker Lynch
                                            United States Magistrate Judge
                                            Southern District of Indiana

Distribution:

All ECF-registered counsel of record by email through the court's ECF system